[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10810
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cr-00208-MSS-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREN LATRICE HOUSTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 20, 2021)

Before WILSON, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

Karen Latrice Houston appeals her convictions for theft of government money, in violation of 18 U.S.C. § 641. Houston applied for and received money from the Federal Emergency Management Agency (FEMA) in 2017 after Hurricane Irma caused substantial property damage in Florida.

On appeal, she argues that the evidence was insufficient to convict her because the government did not present evidence that she knew she was not entitled to relief from FEMA or that she knew her expenditures were improper. She also argues that the district court abused its discretion by failing to inform the jury that there was no testimony about FEMA's definition of "primary residence" in response to a jury question.

I.

A grand jury charged Houston with one count of presenting a false claim to a federal agency, in violation of 18 U.S.C. § 287 (Count 1), and three counts of theft of government property, in violation of § 641 (Counts 2–4). The indictment stated that, as to Count 1, Houston had made a false claim in an application to FEMA by stating that a damaged dwelling at 10 Nassau Avenue, Lakeland, Florida, was her primary residence "as defined by FEMA in that application." With respect to Counts 2 through 4, the indictment alleged that she received three payments from FEMA that she converted to her own use: a $500 Critical Needs Assistance payment, a $12,517.20 Financial Housing Assistance payment, and a

2

$8,858.37 Transitional Sheltering Assistance payment, respectively. Houston pleaded not guilty.

At trial, the government presented evidence including the following: Houston owned her mobile home but rented the 10 Nassau Avenue lot. She was evicted in early 2017 for non-payment of rent—months before Hurricane Irma hit in early September 2017. When the former owner of the mobile home park visited the mobile home in May 2017, it was in disrepair and the electricity and water had been turned off. He said that Houston never returned to live there again before Hurricane Irma. Houston applied for assistance from FEMA. In her application, she specified 10 Nassau Avenue as her damaged property. She said that it was her primary residence, it was damaged by the hurricane, and her utilities were out.[1]

A FEMA employee testified that a letter had been mailed to Houston on September 16, 2017, that specified one of the criteria for receiving assistance: that "[t]he home damaged by the declared disaster is your primary residence, where you reside a majority of the year." The letter explained what the $500 payment could be used for and that intentionally making a false statement or concealing any information to obtain disaster aid is illegal. The letter was admitted into evidence, though the FEMA mail report did not reflect that it had been sent. The employee

---

[1] Notably, the government did not have a copy of the initial FEMA aid application that Houston had filled out—they only had a copy of her answers. That application defined "primary residence."

also testified that a FEMA inspection was conducted on September 29, 2017. At the inspection, Houston verified her occupancy by showing a merchant statement. She also signed a form affirming that the information she had provided to FEMA was true to the best of her knowledge, and that she knew it was illegal to intentionally misrepresent information to obtain aid.

The government also called a forensic accountant, who testified that much of the FEMA money Houston received was spent at clothing and sporting goods retailers and on car insurance and taxes. A significant amount was also withdrawn from ATMs.

After the government rested, Houston moved for a judgment of acquittal. She argued that Count 1 should be dismissed because the FEMA application that defined "primary residence" was not offered, so it would be impossible for a jury to find that she made a false statement to the government. She also argued that Counts 2 through 4 should be dismissed for the same reason and because there was insufficient evidence that she was aware she was misusing the money.

The district court granted the motion with respect to Count 1, but found that as to the remaining counts, there was sufficient evidence for the jury to decide that Houston took government property and converted it to her own use based on her meeting with the FEMA inspector at the disputed property and the September 16 letter.

4

During jury deliberations, the jury sent a question to the court asking, "what is the FEMA definition of primary residence?" Houston asked the court to respond by saying there was no FEMA definition of primary residence in evidence. The government requested that the court refer the jury to the evidence, since the September 16 letter stated that the primary residence was where a person lived a majority of the year and this was evidence of the FEMA definition because it came from a FEMA communication. Ultimately, the court responded by saying "You must rely on your own recollection and review of the record as to whether or not the Government has offered evidence of FEMA's definition of primary residence." Houston objected to that response.

The jury found Houston guilty on Counts 2 through 4. She was sentenced to 60 months of probation and 60 days of home confinement. After her renewed motion for judgment of acquittal was denied, she appealed.

## II.

We first consider Houston's argument that there was not sufficient evidence to convict her of theft of government money. "[W]hether there is sufficient evidence in the record to support a jury's verdict in a criminal trial" is a question we review de novo. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In doing so, we view the evidence in the light most favorable to the government and draw "all reasonable factual inferences in favor of the jury's

verdict." *Id.* The district court's denial of a motion for judgment of acquittal "will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam). The test is the same even where most of the evidence is circumstantial. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994).

"It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990). This is because "[a] jury is free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). Thus, we must sustain a verdict where "there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). We assume that "the jury made all credibility choices in support of the verdict." *United States v. Wilchcombe*, 838 F.3d 1179, 1188 (11th Cir. 2016).

It is illegal to knowingly receive, conceal, or retain stolen government money or property with the intent to convert it to one's own use or gain. 18 U.S.C. § 641. For a defendant to be convicted under § 641, the government must establish that "(1) the money described in the indictment belonged to the United States or an

agency thereof; (2) the defendant appropriated the property to [her] own use; and (3) the defendant did so knowingly with intent to deprive the government of the money." *United States v. Wilson*, 788 F.3d 1298, 1309 (11th Cir. 2015). "To establish the requisite criminal intent, the government need only prove that defendant knowingly used government property for her own purpose in a manner that deprived the government of the use of that property." *Id.* (cleaned up).

Here, there was sufficient evidence for the jury to convict Houston of theft of government money, particularly when we draw "all reasonable factual inferences in favor of the jury's verdict." *Jiminez*, 564 F.3d at 1284. The first two elements are easy—Houston does not contest that the money belonged to FEMA, and the spending records show that she used the funds for her own benefit rather than to repair her home or address disaster-related immediate needs. There is also sufficient evidence that Houston acted knowingly and with the intent to deprive the government.

There was conflicting evidence about whether Houston received a September 16 letter that outlined the purpose of the FEMA aid, specified the eligibility requirements, including that the home must be her "primary residence," and defined that term. The FEMA employee testified that the letter was sent to her, but the mail report does not include the letter. However, the jury was allowed to believe the FEMA employee's testimony. *See id.*

7

The evidence also shows that Houston stated to FEMA that her access to her mobile home was restricted due to the disaster. That was not true—her access was restricted because she had been evicted. In total, the evidence was sufficient for a reasonable jury to find that Houston knew she was lying, and therefore convict her of theft of government money.

III.

Houston also argues that the district court abused its discretion when answering the jury's question because the answer confused the jury. We review a district court's response to a jury question for an abuse of discretion. *United States v. Lopez*, 590 F.3d 1238, 1247 (11th Cir. 2009). Failure to give a requested jury instruction is also reviewed for abuse of discretion. *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007) (per curiam).

It may be appropriate in some circumstances for a district court to expand upon an initial instruction when a jury question arises. *See Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). While the district court enjoys "considerable discretion regarding the extent and character of supplemental jury instructions, it does not have discretion to misstate the law or confuse the jury." *Lopez*, 590 F.3d at 1247–48. "To determine whether the jury was misled or confused, we review supplemental jury instructions as part of the

8

entire jury charge and in light of the indictment, evidence presented, and arguments of counsel." *United States v. Joyner*, 882 F.3d 1369, 1375 (11th Cir. 2018). "We must have a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations before reversing a conviction on a challenge to the jury charge." *Id.* (internal quotation marks omitted).

The district court did not abuse its discretion here by directing the jury to look at the record to determine if there was evidence of FEMA's definition of "primary residence." Though the original FEMA application itself—which contained the official FEMA definition—was not in evidence, the September 16 letter and FEMA employee's testimony both offered definitions of "primary residence" that FEMA used. Accordingly, instructing the jury to look to the evidence to determine the answer to their question did not misstate the evidence or confuse the jury. *See Lopez*, 590 F.3d at 1247–48. The instruction also did not undermine either side's arguments about the importance of the definition to the case. Therefore, we affirm.

**AFFIRMED.**